IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Duquette M. Matthews,      Case No. 3:15CV00665

    Plaintiff,

v.     **ORDER**

City of Toledo, *et al.*,

    Defendants.

This is a civil rights action in which the plaintiff, Duquette Matthews, alleges the City of Toledo and a Toledo Police Department Officer violated his constitutional rights.

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367.

Pending are defendants' separate motions for summary judgment (Docs. 25, 26).  For the reasons that follow, I grant defendant City of Toledo's motion and grant in part and deny in part defendant Officer Todd Babcock's motion.

**Background**

On April 5, 2014, at about 11:30 P.M., defendant Officer Babcock recognized a black Dodge car previously reported as stolen. Officer Babcock, who was traveling in the opposite direction, quickly turned around and caught up with the stolen car. At that time, Officer Babcock confirmed the car, a 2013 black Dodge Avenger, was a stolen car. He also noticed other passengers and requested backup.

Officer Babcock followed the stolen black Dodge into a nearby McDonald's parking lot. The car stopped at the second menu board in the drive-thru lane, where the passengers appeared to order. Meanwhile, Officer Babcock drove around the drive-thru to the front of the McDonald's property and parked at the exit, waiting for backup to help cut off the suspect's escape route. At that point, defendant lost sight of the stolen black Dodge, which remained at the second menu board.

Shortly after Officer Babcock and the suspect car entered the McDonald's, plaintiff, who was driving a 2007 black Dodge Charger, pulled into the same McDonald's drive-thru lane. Plaintiff, positioned directly behind the stolen black Dodge Avenger, ordered food. By that time, the passengers of the stolen black Dodge Avenger had abandoned the car and fled. Plaintiff drove around the stolen black Dodge and to the pay window.

When plaintiff tried to leave the McDonald's parking lot, Officer Babcock and Sergeant Kevin Smith blocked his path, acting under the mistaken belief that plaintiff was driving the stolen black Dodge Avenger. After stopping the car, Officer Babcock allegedly drew his gun and ordered plaintiff out of the vehicle. Then, Officer Babcock allegedly pulled plaintiff from the car and threw him to the ground. Other Toledo Police Officers handcuffed the plaintiff.

At that point, a McDonald's employee told Lieutenant Pepitone, who, along with several other officers, had arrived as backup, that the passengers of the stolen black Dodge Avenger had abandoned the car and run into a field behind the restaurant (Officer Babcock could not have seen them do so). When Officer Babcock and the other officers learned of the mistake, they released plaintiff and his passengers.

The next day, plaintiff went to the hospital for emergency treatment, complaining of left shoulder and back pain. Plaintiff was diagnosed with a labral tear in his left shoulder and underwent

surgery to repair the damage. According to plaintiff, he still experiences shoulder and back pain. He asserts that, as a result of the ongoing effects of Officer Babcock's throwing him to the ground, he lost his job in May, 2015 as a cook at a Bob Evans restaurant because he could not lift heavy equipment.

Plaintiff brought this suit against defendants City of Toledo, Toledo Police Officer Todd Babcock, and Toledo Police Lieutenant Randy Pepitone.[1]

Plaintiff alleges: 1) Officer Babcock used excessive force and executed an unreasonable seizure in violation of the Fourth and Fourteenth Amendments; and 2) defendant City of Toledo failed properly to train and supervise its employees. Additionally, plaintiff seeks to hold defendant City of Toledo liable for Officer Babcock's actions under a *respondeat superior* theory.

Plaintiff also brings state-law claims for emotional distress, assault and battery, and trespass and again seeks to hold defendant City of Toledo liable for Officer Babcock's actions under a *respondeat superior* theory.

**Standard of Review**

Summary judgment is appropriate under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477

---

[1] Lieutenant Pepitone is no longer a defendant in this case.

U.S. 242, 250 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

I accept the non-movant's evidence as true and construe all evidence in its favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

## Discussion

### A. Federal Claims

Matthews brings his constitutional claims under 42 U.S.C. § 1983.

To succeed on a § 1983 claim, a plaintiff must prove: "1) the defendant was a person acting under the color of state law, and 2) the defendant deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or the laws of the United States." *Fridley v. Horrighs*, 291 F.3d 867, 871-72 (6th Cir. 2002).

In response to Matthews's constitutional claims, defendants assert qualified immunity, which "shields 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Barker v. Goorich*, 649 F.3d 428, 433 (6th Cir. 2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Plaintiff bears the burden of proving defendants are not entitled to qualified immunity. *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 568 (6th Cir. 2013).

To determine whether qualified immunity applies, I engage in a three-step inquiry:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what

the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quotation omitted). If the answer to all three questions is "yes," qualified immunity is not proper.

*Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004).

### 1. Count One - Excessive Force/Unreasonable Seizure

Officer Babcock concedes he used force against Matthews. Specifically, he admits that after ordering him out of his car, he took plaintiff to the ground while completing an arrest. Officer Babcock argues, however, the force was reasonable under the circumstances, and, therefore, he is entitled to qualified immunity.

There is no question Matthews had a constitutional right to be free from excessive force, *Graham v. Connor*, 490 U.S. 386, 395 (1989), and that right was clearly established. *Norton v. Stille*, 526 F. App'x 509 (6th Cir. 2013). In *Norton*, the court stated:

> It is clearly established that officers may not use force on a detainee who is subdued and controlled . . . . When force is used on a detainee who poses no threat to officers or anyone else, that force is excessive and it is a violation of the detainee's Fourth Amendment rights.

*Id.* at 513-14 (internal citations omitted).

What matters is whether plaintiff "'offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" *Champion, supra*, 380 F.3d at 905 (quoting *Feathers, supra*, 319 F.3d at 848).

The Fourth Amendment imposes an objective reasonableness test for excessive force claims. Recently, in *Kingsley v. Hendrickson*, — U.S. —, —, 135 S. Ct. 2466, 2473 (2015), the Supreme Court held that for an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Courts must weigh all the

facts and circumstances and consider the reasonableness of the force from "the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*

> Specifically, courts should consider:
>
> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.*

Further, the Supreme Court's opinion in *Graham*, *supra,* 490 U.S. at 396, prescribes a three-factor set of considerations applicable when assessing whether the force an officer or officers used to effectuate an arrest was constitutionally acceptable (*i.e.,* the objective reasonableness of the officer's conduct under the circumstances). Those three factors are: the severity of the crime, whether the suspect posed an immediate threat to the safety of officers or others, and whether the suspect actively resisted arrest or attempted to evade arrest by flight. *Id.*

At the outset, to be clear, it is not the reasonableness of Officer Babcock's belief that the plaintiff's black Dodge Charger was the stolen black Dodge Avenger. Officer Babcock certainly could have been more careful in identifying the proper vehicle; however, I do not find his mistake to be so unreasonable or inexplicable to rise to the level of a violation of plaintiff's constitutional right under the Fourth Amendment to be free of unreasonable restraint.

I conclude that, giving greater favor to plaintiff's version of disputed facts, plaintiff has produced sufficient evidence to overcome both prongs of Officer Babcock's motion for summary judgment with respect to Count One (namely the use of excessive force and qualified immunity).

First, the parties present drastically different portrayals of the force Officer Babcock used in taking the plaintiff into custody and the takedown. Contrary to plaintiff's description of the circumstances, Officer Babcock testified he did not open plaintiff's car door, yank plaintiff out of the car, throw plaintiff to the ground, or draw his gun on plaintiff. According to Officer Babcock, he did not touch plaintiff, despite also testifying that he did, in fact, execute an arrest. (Doc. 33).

Office Babcok contends the situation was "tense, uncertain, and rapidly evolving" with an urgent need to secure the premises and safely arrest the plaintiff and constrain his passenger. He describes the force used as "an appropriate and measured reaction to the information available to him at the time." (Doc. 26).

Plaintiff, however, alleges that Officer Babcock's seizure was objectively unreasonable and reckless in light of the totality of the circumstances. Plaintiff states Officer Babcock had his gun drawn when he ordered him out of his car and slammed him to the ground. Also, according to plaintiff, during the arrest, he felt knees placed in his back and neck. In addition to the injury to his shoulder (and the resulting need for surgery), plaintiff states Officer Babcock's use of force caused plaintiff's cell phone to break during the arrest.

A sworn affidavit by Toledo Police Officer Shawn Parra, who was present as backup, tends to support plaintiff's version of events. Parra states he saw Officer Babcock taking plaintiff to the ground, holding plaintiff in an "escort position"–by plaintiff's left arm and left shoulder as he forced him to the ground. Parra's statements directly conflict with Officer Babcock's "never touched him" claim.[2]

---

[2] Though I have held, *supra*, that Officer Babcock's initial decision to stop and detain the plaintiff was not so unreasonable as to constitute a violation of plaintiff's constitutional rights, that does not necessarily mean that his failure to realize his mistake before applying the force plaintiff

Further, the (for now) unexplained failure to produce any dashcam videos, despite several Toledo Police Department squad cars being present at the McDonald's property, adds to the genuiness of the factual dispute.[3]

If the jury in this case found plaintiff's account of what happened to him more plausible than Officer Babcock's, it could, in light of the overall circumstances, as to which, in part at least, dispute is not likely,[4] unquestionably find the force he used excessive. In which case, the defense of qualified immunity would be unavailing. *See, e.g., Miller v. Sanilac County,* 606 F.3d 240, 253–54 (6th Cir. 2010); *see also Lustig v. Mondeau*, 211 F. App'x 364, 371 (6th Cir. 2006) (finding plaintiff could demonstrate unreasonable force where "plaintiff . . . alleged . . . [defendant] repeatedly and gratuitously applied additional force . . . against an individual who posed no threat to safety, did not attempt to flee, offered at most passive resistance to the officers, and was already under the officers' physical control").

Therefore, defendant Officer Babcock is not entitled to summary judgment, either on the potential merits of plaintiff's claim of excessive force or the defense of qualified immunity.

---

contends that he applied might not be something for the jury to consider in determining whether the force Officer Babcock thereafter employed was excessive. That is, in any event, a possible subject for later consideration.

[3] I also leave for later consideration whether a "missing evidence" instruction might, under the circumstances, be appropriate.

[4] *E.g.,* Two police cars had plaintiff's vehicle, if not totally boxed in, immobilized; several officers were on the scene, many, apparently, with guns drawn; plaintiff did not attempt to flee; any delay on plaintiff's part in responding to Officer Babcock's demand that he get out of his car was momentary at most and unaccompanied by furtive gestures or the like.

## 2. Count Five - Color of Law and Scope of Employment

It is difficult to discern what plaintiff seeks to allege in Count Five, which reads: "Defendant City is the employer of Defendants Pepitone, Babcock, and Doe. Defendants committed the acts alleged above under color of law and in the scope of their employment as employees of the City of Toledo and/or the State of Ohio." (Doc. 1).

I evaluate this allegation as a municipal liability claim that defendant City of Toledo either adopted policies or engaged in practices and customs indifferent towards citizens' civil rights.

In his opposition brief, plaintiff failed to respond to defendant City of Toledo's objection to his *respondeat superior* claim.

Under Federal Rule of Civil Procedure 56(c), "A party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular facts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."

At the summary judgment stage, an opponent of the motion may not rely solely on allegations made in the complaint but must put forward specific facts showing a genuine issue for trial. *Anderson, supra,* 477 U.S. at 248.

Further, under the Federal Rules:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (3) grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it . . . .

Fed. R. Civ. P. 56(e)(3).

I reviewed the record, and I dismiss the claim for lack of opposition to defendant City of Toledo's motion for summary judgment.

Nonetheless, and in the alternative, I will consider the merits on the facts of record. Dismissal on that basis is warranted as well, as the claim fails under the analysis set forth in *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978).

A governmental employer of a state official charged under § 1983 cannot be held liable merely on the basis of *respondeat superior* (*i.e.,* simply because it was the official's employer). *Id.* at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor . . . ."); *see also Myers v. Huron County,* 2008 WL 271657, *3 (N.D. Ohio) ("Respondeat superior is not enough to impose liability on the governmental entity.").

Under *Monell*, municipal liability may be established by: 1) an actual policy or ordinance sanctioned by the municipal body's governing board; 2) an official policy adopted by one with final authority to establish municipal policy; or 3) a municipal custom "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell, supra,* 436 U.S. at 691. Liability "attaches where–and only where–a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy *with respect to the subject matter* in question." *Johnson v. Hardin Coutny*, 908 F.2d 1280, 1286 (6th Cir. 1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 470 (1986) (emphasis in original)).

The law is clear that a plaintiff cannot prevail against a municipal employer simply on the basis of an isolated act of police misconduct. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). In *Tuttle*, a police officer shot and killed an individual in the course of responding to a reported bar robbery. *Id.* at 810-11.

There, the Supreme Court declined to impose municipal liability from merely one incident involving excessive force, even though the plaintiff introduced expert testimony evidencing inadequate training. *Id.* at 821-22. The plaintiff did not introduce evidence of similar conduct by any other officer on the police force. *Id.* at 812. Also, the plaintiff did not allege the city maintained a policy that officers employ excessive force in apprehending criminal suspects as a general rule. *Id.* at 820.

Here, plaintiff's municipal liability claim fails because he does not meet the Sixth Circuit's articulation of the *Monell* standard, whereby he must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citing *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)).

Plaintiff has failed to present any evidence to support a contention that, when using force to seize him, Officer Babcock was acting in accordance with and furtherance of a custom, practice, or policy that either the City of Toledo or an official acting on its behalf had explicitly or implicitly adopted. Plaintiff points to no evidence showing other similar incidents by Toledo Police Officers; rather, he relies solely on his own incident. Simply put, proof of a single or isolated incident of alleged unconstitutional conduct is insufficient to impose liability on defendant City of Toledo.

Therefore, I grant summary judgment as to plaintiff's municipal liability claim against defendant City of Toledo.[5]

---

[5] While this case comes before me on summary judgment, I find the conclusory nature of the allegations regarding plaintiff's *Monell* claim expose the claim to dismissal even under *Twombly/Iqbal* doctrine.

### 3. Count Three - *Respondeat Superior*

As with Count Five, it is difficult to discern what plaintiff seeks to allege in Count Three of the complaint, which reads:

> Defendants Pepitone, Babcock and Doe, were, at all times material to this complaint, authoritative employees of Defendant City of Toledo, acting within the color and scope of their employment, and the acts which violate state and federal law are directly chargeable to Defendant City under state law pursuant to *respondeat superior*.

(Doc. 1).

In his opposition brief, plaintiff failed to respond to defendant City of Toledo's objection to his *respondeat superior* claim.

I reviewed the record, and I dismiss the claim for lack of opposition to defendant City of Toledo's motion for summary judgment.

Nonetheless, and in the alternative, I will consider the merits on the facts of record. Dismissal on that basis is warranted as well.

As noted above, § 1983 does not permit a plaintiff to sue a local government entity on the theory of *respondeat superior*. *Monell, supra,* 436 U.S. at 692-94. Rather, a local government entity is liable under § 1983 for its own wrongdoing, *id.,* or, in other words, "only for the consequences of its own policies or customs that create a deprivation of constitutional rights." *Daughenbaugh v. City of Tiffin*, 949 F. Supp. 1315, 1323 (1996); *see also Monell, supra,* 436 U.S. at 694.

Plaintiff seeks to hold defendant City of Toledo liable for Officer Babcock's actions based on a *respondeat superior* theory, which is not a proper basis for liability in a § 1983 claim.

Therefore, I grant summary judgment as to plaintiff's *respondeat superior* claim against defendant City of Toledo.[6]

### 4. Count Eight - Failure to Train

Defendant City of Toledo argues plaintiff produced no evidence to show it does not train its officers or that any training it provides is constitutionally inadequate.

In his opposition brief, plaintiff failed to respond to defendant City of Toledo's objection to his failure to train claim.

I reviewed the record, and I dismiss the claim for lack of opposition to defendant City of Toledo's motion for summary judgment.

Nonetheless, and in the alternative, I will consider the merits on the facts of record. Dismissal on that basis is warranted as well.

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."[7] *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Gregory v. City*

---

[6] To the extent plaintiff alleges a state-law *respondeat superior* claim against defendant City of Toledo, dismissal is nevertheless proper. Ohio law is clear: a municipality is statutorily immune from a claim arising out of a police action, absent application of a § 2744.02(B) exception. *See infra* Section (B); *see also, e.g., Gammon v. Euclid*, 113 Ohio App. 3d 256, 261 (1996); *Lytle v. Columbus*, 70 Ohio App. 3d 99, 106 (1990). Despite plaintiff's attempt to hold defendant City of Toledo liable for Officer Babcock's actions, there is simply no *respondeat superior* exception to the city's immunity.

Further, similar to the allegations made in Count Five, I find the conclusory nature of the allegations regarding plaintiff's *respondeat superior* claim expose the claim to dismissal under *Twombly/Iqbal* doctrine.

[7] Of note and significance in the present action, the Supreme Court in *Harris* went on to state, "This rule is most consistent with our admonition in *Monell*, 436 U.S., at 694, 98 S. Ct., at 2037, and *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S. Ct. 445, 454, 70 L.Ed.2d 509 (1981), that a

*of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006) ("Only when the failure to train amounts to 'deliberate indifference' on behalf of the city towards its inhabitants, however, will failure to train lead to city liability under § 1983.") (quoting *Harris, supra,* 489 U.S. at 389).

A plaintiff must show that "the training program at issue is inadequate to the tasks that officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992) (internal citation and quotation marks omitted).

There is simply no evidence in the record from which a jury could conclude defendant City of Toledo's police training was so inadequate that it amounts to deliberate indifference to the rights of persons, such as plaintiff, with whom the police interact.

Therefore, I grant summary judgment as to plaintiff's failure to train claim against defendant City of Toledo.

**B. State Law Claims**

I may exercise supplemental jurisdiction over state law claims if state and federal claims derive from the same common nucleus of operative facts. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). Plaintiff's state law claims derive from the same common nucleus of operative facts as his federal claims. Thus, supplemental jurisdiction is proper.

Officer Babcock argues he is entitled to immunity under Ohio Rev. Code § 2744.03. Section 2744.03(A)(6)(b) provides that an employee of a political subdivision is immune from liability in a civil action based on any act or omission in connection with a governmental function unless "[t]he

---

municipality can be liable under § 1983 only where its policies are 'the moving force [behind] the constitutional violation.'" *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989).

14

employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless matter."

Because Officer Babcock is an employee of a political subdivision, *see* O.R.C § 2744.01(B), and providing police services or protection is a governmental function, *see* O.R.C. § 2744.01(C), he is entitled to immunity for plaintiff's state law claims unless one of the § 2744.03(A)(6) exceptions applies.

When there are genuine issues of material fact as to whether governmental employees acted with malicious purpose, in bad faith, or in a wanton or reckless manner, I cannot extend state statutory immunity under § 2744.03. *See, e.g., Kaylor v. Rankin*, 356 F. Supp. 2d 839, 853 (N.D. Ohio 2005).

Similarly, defendant City of Toledo argues it is entitled to immunity under Ohio Rev. Code § 2744.02(A)(1). Under § 2744.02(A)(1), a political subdivision is immune from liability in a civil action for "injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Immunity for political subdivisions is subject to five limited exceptions listed in § 2744.02(B).

I consider each of plaintiff's state law claims in light of these doctrines.

### 1. Count Two - Emotional Distress/Mental Anguish

As noted above, if a party fails to support a factual assertion, I may grant summary judgment if the motion shows the movant is entitled to it. Fed. R. Civ. P. 56(e)(3).

I reviewed the record, and plaintiff failed to respond in any way to defendant's arguments regarding the emotional distress claim. Plaintiff makes no mention of this claim at all, other than the allegations made in the complaint.

I dismiss the claim because plaintiff fails to submit evidence in support of otherwise conclusory factual assertions.[8]

Nonetheless, and in the alternative, I will consider the merits on the facts of record. Dismissal on that basis is warranted as well.

Under Ohio law, a claim for intentional infliction of emotional distress requires proof of:

> (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community, (3) that the actor's actions were the proximate cause of the plaintiff's psychic injury, and (4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable man could be expected to endure it.

*Burkes v. Stidham,* 107 Ohio App. 3d 363, 375 (1995).

Simply put, plaintiff fails to offer any evidence on an essential element of this cause of action –namely, that Officer Babcock intended to cause him serious emotional distress when he executed the takedown and arrest.

Therefore, I grant summary judgment as to plaintiff's emotional distress claim against defendant Officer Babcock.

---

[8] As noted above, I find the conclusory nature of the allegations regarding plaintiff's emotional distress/mental anguish claim expose the claim to dismissal under *Twombly/Iqbal* doctrine.

### 2. Count Six - Trespass

Neither party addresses or opposes plaintiff's trespass claim.

Therefore, I treat this claim as withdrawn, and I grant summary judgment.

### 3. Count Seven - Assault and Battery

Officer Babcock asserts his § 2744.03 immunity as a complete defense and, in the alternative, argues plaintiff cannot establish a claim of assault or battery.

Other than his response to the excessive force claim, plaintiff does not respond explicitly to Officer Babcock's objections to his assault and battery claim.

Nonetheless, I will consider the merits on the facts of record.

I recently held in *Dresher v. Lucas County*, 2016 WL 5338042 (N.D. Ohio), that, based on a substantially similar factual dispute (likewise involving a forcible takedown that resulted in injuries), a reasonable jury potentially could find the defendant officer acted with malicious purpose, in bad faith, or in a wanton or reckless manner, so that summary judgment as to the state law claim was not appropriate. So too here. *See also, e.g., Martin v. City of Broadview Heights*, 712 F.3d 951, 963 (6th Cir. 2012) ("As resolution of the state-law immunity issue is heavily dependent on the same disputed material facts as the excessive-force determination under § 1983, the district court properly denied summary judgment to the officers on the estate's state-law claims.").[9]

Therefore, defendant Officer Babcock is not entitled to summary judgment as to plaintiff's assault and battery claim.

---

[9] I reserve until the close of the evidence the issue of whether to give a punitive damage charge as to any or all claims.

**Conclusion**

Because there is no genuine issue of material fact as to whether defendant City of Toledo violated plaintiff's federal constitutional rights or state law, it is entitled to summary judgment as to all plaintiff's claims.

Because a genuine issue of material fact remains as to whether defendant Officer Todd Babcock used excessive force, he is not entitled to summary judgment as to all claims against him.

It is, therefore,

ORDERED THAT:

1. Defendant City of Toledo's motion for summary judgment (Doc. 25) be, and the same hereby is, granted as to all claims; and

2. Defendant Officer Todd Babcock's motion for summary judgment (Doc. 26) be, and the same hereby is, denied as to plaintiff's federal claim of excessive force and unreasonable seizure, denied as to plaintiff's state-law assault and battery claim, and otherwise granted as to the remaining claims.

The Clerk shall set a telephone status/scheduling conference.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge